J-S13003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :             PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| REYNOLDO A. FIGUEROA-ARDON | : |
| | : |
| Appellant | :  No. 1679 EDA 2025 |

Appeal from the PCRA Order Entered June 3, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001840-2021

BEFORE: PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED JUNE 2, 2026**

Reynoldo A. Figueroa-Ardon appeals from the order dismissing his first, timely filed, petition pursuant to the Post-Conviction Relief Act ("PCRA").[1] Figueroa-Ardon claims the PCRA Court erred in finding all prior counsel were not ineffective. After careful review, we affirm.

The PCRA court set forth the relevant factual and procedural history:

On Wednesday, March 10, 2021, at approximately 8:00 a.m., Whitemarsh Police Officer (now Corporal), Matthew Stadulis, received a call from his in-house dispatcher. Officer Stadulis was informed there was a suspicious male checking car doors on Mulberry Lane in Whitemarsh Township, Montgomery County. Officer Stadulis arrived on scene and observed [Figueroa-Ardon, who matched the description given, as he was] wearing a green sweatshirt with orange hoodie, exiting the neighborhood of Mulberry Lane and Ridge Pike. Officer Stadulis parked and exited his patrol vehicle. Officer Stadulis approached [Figueroa-Ardon] and asked for his identification, which [Figueroa-Ardon] was

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

unable to provide. [Figueroa-Ardon] was uncooperative with Officer Stadulis and appeared as if he was going to run away, so Officer Stadulis grabbed [Figueroa-Ardon's] right arm with his right hand. In response, [Figueroa-Ardon] pulled a handgun out of his waistband and placed it inches away from Officer Stadulis' face. [Figueroa-Ardon] then pulled the trigger. The hammer came back, but the gun did not fire. [Figueroa-Ardon] repeated this act about three (3) more times while pointing the weapon at Officer Stadulis' face. Officer Stadulis then attempted to wrest the handgun from [Figueroa-Ardon's] hand, causing them to fall into traffic and roll around on the eastbound lane of Ridge Pike, a four-lane arterial road. Officer Stadulis repeatedly banged [Figueroa-Ardon's] hand along the pavement until he was finally able to dislodge the firearm. Officer Stadulis then continued to try to get control of [Figueroa-Ardon], but [he] continued to resist arrest. [Figueroa-Ardon] also attempted to repeatedly grab Officer Stadulis' gun from his belt. Finally, Officer Stadulis was able to flip [Figueroa-Ardon] face down onto the street and apply sufficient pressure so that [Figueroa-Ardon] stopped fighting. Officer Stadulis maintained pressure on [Figueroa-Ardon] until Detective Sergeant James Cotter, Detective Stephen Kerns, and Detective Richard Zadroga arrived and were able to place [Figueroa-Ardon] in handcuffs.

[Figueroa-Ardon] was then transported to the Whitemarsh Police Station from the scene. Detectives, Stephen Kerns and Richard Zadroga, provided [Figueroa-Ardon] with his **Miranda**[2] rights prior to asking him any questions regarding the incident. [Figueroa-Ardon] acknowledged his **Miranda** rights and waived them. During the interview, Detective Kerns asked [Figueroa-Ardon] a series of questions. Specifically, Detective Kerns asked [Figueroa-Ardon] what he did with the gun after he pulled it out, to which [Figueroa-Ardon] replied that "I tried to shoot him." Detective Kerns then asked [Figueroa-Ardon] where he tried to shoot him or where did he point the gun, to which [Figueroa-Ardon] replied, "I pointed it at his head." Detective Kerns then asked [Figueroa-Ardon] did he pull the trigger, and did he know if he pulled the trigger more than once, to which [Figueroa-Ardon] replied that he pulled the trigger "like three or four times." Detective Kerns then asked [Figueroa-Ardon] what happened

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

after the gun did not go off to which [Figueroa-Ardon] replied that they were "fighting."

Detective Anthony Caso works for the Montgomery County Detective Bureau and on March 10, 2021, was informed by his Lieutenant of the arrest made in Whitemarsh Township. Detective Caso met with Detective Sergeant Cotter when he arrived at the station, who provided him with an overview of what happened. Detective Caso then reviewed the statements of Officer Stadulis and [Figueroa-Ardon]. Detective Caso also spoke to Detective Kerns in order to be fully up to speed on all of the available information. Detective Caso also met with [Figueroa-Ardon] to see if he would be willing to do a demonstration of what occurred. Detective Caso and Detective Kerns walked [Figueroa-Ardon] into the interview room and showed [Figueroa-Ardon] the Whitemarsh Police Department's *Miranda* warnings, which was the exact copy that Detective Kerns and Detective Zadroga had previously provided him. Detective Caso and Detective Kerns then advised [Figueroa-Ardon] that the interview was being recorded with both sound and video. Detective Caso used a "toy gun" and had [Figueroa-Ardon] demonstrate how he tried to shoot Officer Stadulis, by pointing the gun "right up to his face" and pulling the trigger "like three or four times[."]

On March 24, 2021, Magisterial District Judge, Deborah A. Lukens, presided over [Figueroa-Ardon's] preliminary hearing, with [Figueroa-Ardon] represented by his attorney, Benjamin Cooper, Esquire. Following testimony, Judge Lukens held all charges for court. On April 14, 2022, [Figueroa-Ardon's] counsel filed a motion to suppress both statements. Subsequently, [Figueroa-Ardon] waived his right to trial by jury and elected to be tried before [the Honorable Thomas M. Delricci]. On August 11, 2022, prior to the start of the bench trial, [the trial court] heard [Figueroa-Ardon's] motions to suppress. At the conclusion of the hearing, the court stated on the record that it was analyzing and determining the admissibility of two (2) separate statements: 1) written statement given at approximately 11:00a.m., on March 10, 2021; and 2) recorded statement taken later that afternoon. [The] court then made findings of fact on the record and issued its ruling that in both instances, "the interrogation and the statements comply with all applicable state and constitutional requirements, as well as Pennsylvania case law. Accordingly the motion is denied."

Following the ruling on [Figueroa-Ardon's] motions to suppress, a one (1) day bench trial occurred in which [the] court convicted [Figueroa-Ardon] of count 1 attempted homicide, count 2 aggravated assault, count 3 receiving stolen property, count 4 disarming [law enforcement] officer, count 5 firearms [not to be] carried without a license, count 6 person[s] not to possess a firearm, count 7 [possessing instruments of crime], and count 8 recklessly endangering another person.[3] Sentencing was deferred so that various evaluations could take place, including a presentence investigation and a psychiatric evaluation. [Figueroa-Ardon] agreed to waive the 90-day sentencing requirement.

On November 9, 2022, a sentencing hearing was held in which the court imposed a sentence as follows: count 1 ten (10) to twenty (20) years, count 2 ten (10) to twenty (20) years to run consecutive to count 1, count 3 one (1) to two (2) years consecutive to count 2, count 4 two (2) to four (4) years consecutive to count 3, count 5 three (3) to six (6) years consecutive to count 4, count 6 one (1) to two (2) months concurrent to count 1, count 7 three (3) to six (6) months concurrent to count 1, and count 8 one (1) to two (2) years consecutive to count 5. The aggregate sentence of incarceration imposed totaled twenty-seven (27) to fifty-four (54) years.

On November 17, 2022, [Figueroa-Ardon] filed a timely post sentence motion to reduce sentence, arrest judgment or grant new trial. On November 25, 2022, [the] court denied [his] motion. On December 22, 2022, [Figueroa-Ardon] filed a timely notice of appeal. … On September 14, 2023, [this Court] affirmed [Figueroa-Ardon's judgment of sentence. ***See Commonwealth v. Figueroa-Ardon***, 305 A.3d 987 (Pa. Super. filed Sept. 13, 2023) (unpublished memorandum)]. On October 24, 2023, [Figueroa-Ardon] filed for Allocatur, and the Pennsylvania Supreme Court denied review on April 9, 2024. [***See Commonwealth v. Figueroa-Ardon***, 316 A.3d 620 (Pa. 2024).]

… The instant PCRA was filed, with the assistance of private counsel, on April 11, 2025… .

\*\*\*

_____

[3] 18 Pa.C.S.A. §§ 901(a), 2702(a)(2), 3925(a), 5104.1(a), 6106(a)(1), 6105(a)(1), 907(b), and 2705, respectively.

On April 22, 2025, [the] court issued an order pursuant to Pa.R.Crim.P. 907(1) of its intention to dismiss [Figueroa-Ardon's] PCRA petition without a hearing. Said 907 notice granted [Figueroa-Ardon] twenty (20) days to file a response to the proposed dismissal of his PCRA petition, with no objection having been filed by [Figueroa-Ardon] or his counsel. On June 2, 2025, [the] court issued a final order of dismissal of [the] PCRA petition.

On June 30, 2025, [Figueroa-Ardon] filed a timely notice of appeal. On July 2, 2025, [the] court issued an order directing [Figueroa-Ardon] to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b) … within twenty-one (21) days. On July 18, 2025, [Figueroa-Ardon] filed a timely concise statement. …

PCRA Court Opinion, 7/22/25, at 1-7 (brackets, footnotes, record citations, and unnecessary capitalization omitted).

The PCRA court authored its Rule 1925(a) opinion on July 22, 2025. **See** Pa.R.A.P. 1925(a). This case is now ripe for our review.

Figueroa-Ardon raises five claims for our review:

I. Whether prior counsel provided … ineffective assistance of counsel in failing to argue that the aggravated assault and attempted murder convictions merged for sentencing purposes where [Figueroa-Ardon] committed only one criminal act as part of a brief criminal episode but [Figueroa-Ardon] received consecutive sentences on the two first-degree felony charges[?]

II. Whether trial counsel provided … ineffective assistance of counsel in stipulating [Figueroa-Ardon] was a person not to possess for purposes of … § 6105 where the record established [Figueroa-Ardon] was in the country lawfully under the [Deferred Action for Childhood Arrivals ("DACA")] program[?]

III. Whether prior counsel should have challenged the possessing an instrument of a crime offense because the crime charged requires that a defendant possess a concealed firearm with the intent to employ it criminally to be guilty and the evidence showed that although [Figueroa-Ardon] ultimately used the firearm

- 5 -

criminally later, it did not show that he intended to do anything criminal with it at the time that it was concealed[?]

IV. Whether sentencing counsel provided … ineffective assistance of counsel in failing to object at sentencing or file a post-sentence motion arguing that the sentencing court erred in holding [Figueroa-Ardon's] silence against him at sentencing[?]

V. Whether appellate counsel should have appealed the conviction for disarming a law enforcement officer because the evidence was insufficient to support a conviction for that charge given that the officer testified only that he felt [Figueroa-Ardon] grabbing his belt while they were struggling and rolling around on the ground[?]

Appellant's Brief, at 4-5 (reordered for ease of disposition; suggested answers omitted).

We begin with our well-established standard of review:

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Smith***, 352 A.3d 111, 116 (Pa. 2026) (brackets and citation omitted).

All five of Figueroa-Ardon's claims allege prior counsel were ineffective:

It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered

- 6 -

prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Id.* (citations and quotation marks omitted).

Figueroa-Ardon first claims sentencing and appellate counsel provided ineffective assistance for failing to argue that the sentences for attempted murder and aggravated assault should have merged. *See* Appellant's Brief, at 18. Figueroa-Ardon asserts that, because the attempted shooting and subsequent struggle were "an uninterrupted continuation of the same offense," he should not have been sentenced on both attempted murder and aggravated assault. *Id.* at 20. He believes that aggravated assault should have merged into attempted murder. *See id.*

The Commonwealth responds that the crimes did not merge because they were "two distinct criminal acts separated by purpose and sequence: first, a completed attempt to execute a uniformed officer at point-blank range; second, a prolonged physical assault and attempt to disarm the officer of his duty weapon during an effort to flee in live traffic." Appellee's Brief, at 18. The Commonwealth posits that "the crimes did not arise from a single criminal act" and therefore merger was inappropriate. *Id.* As such, the Commonwealth contends, Figueroa-Ardon has not established the requisite elements of ineffective assistance of counsel because all prior counsel were effective in their representation. *See id.* at 25.

The PCRA court found no arguable merit to this claim, and reiterated what it explained at sentencing:

> The court does not find—and I think this is an important issue to discuss. I understand how you got there, okay? Because the elements of the offense are the same, and normally that calls for merger. I have carefully reviewed and spent a lot of time on this. The bills were not specific with regard to the events that were charged as the aggravated assault. As I heard the case and decided the case, to this court, there were two incidents. The first is the attempted homicide. This is based on the defendant's actions, as found by this court, in pulling a gun from his waist and turning around and placing it at the then officer, now corporal's head, and pulling the trigger. At that point in time, the attempted homicide stopped. The gun didn't go off. Then there was a second series of events that occurred with a different purpose. As the court heard the evidence, the court determined that there was a fight that ended up in the middle of Ridge Pike, where [Figueroa-Ardon] was striking and attempting to escape. A whole different purpose than shooting the officer. That's the aggravated assault.
> …
>
> Based on the facts, there's nothing in the bills or anything that would preclude the court's interpretation, based on these facts. We see the escape attempt and the confrontation between the officer and [Figueroa-Ardon] as a separate act from the attempted homicide, [which] would stop the moment the gun didn't go off and the gun was disarmed.

PCRA Court's Opinion, 7/22/25, at 11 (quoting N.T. Sentencing, 11/9/22, at 8-10; unnecessary capitalization omitted).

This Court has detailed the merger doctrine as follows:

Pennsylvania's merger doctrine is codified in section 9765:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may

> sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. It is well-settled that Section 9765 prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

> > When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1043-44 (Pa. Super. 2024) (quotation marks and some citations omitted)

We agree with the PCRA court and the Commonwealth. Figueroa-Ardon committed two separate, distinct criminal acts. First, Figueroa-Ardon attempted to murder Officer (now Corporal) Stadulis by pulling out a firearm, aiming it at his head, and pulling the trigger multiple times. Second, Figueroa-Ardon attempted to cause serious bodily to Officer Stadulis by struggling with him, causing them to fall onto Ridge Pike, and attempting to remove Officer Stadulis' firearm from his gun belt. Figueroa-Ardon committed multiple criminal acts beyond what was necessary to establish the bare elements of aggravated assault and attempted murder. *See id.* at 1044. We therefore find no error in the PCRA court's analysis. Because counsel cannot be ineffective for failing to raise a meritless issue, Figueroa-Ardon's first claim does not merit

relief. ***See Commonwealth v. Sepulveda***, 55 A.3d 1108, 1117 (Pa. 2012) ("Counsel cannot be deemed ineffective for failing to raise a meritless claim.").

Next, Figueroa-Ardon claims appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his persons not to possess firearms conviction. ***See*** Appellant's Brief, at 28. Figueroa-Ardon asserts he was lawfully present in the United States under the DACA program and as such, his trial counsel was ineffective for stipulating that he was in the United States unlawfully, making him a person not to possess a firearm. ***See id.*** at 28-30.

The Commonwealth argues that Figueroa-Ardon is not eligible for PCRA relief on this claim because he has already served his sentence for persons not to possess firearms. ***See*** Appellee's Brief, at 28. Alternatively, the Commonwealth posits that the federal courts have held that DACA status does not create lawful status regarding the federal persons not to possess firearm statute. ***See id.*** at 33. Because the language in the two statutes is nearly identical, the Commonwealth asserts that this Court should find DACA does not provide an individual lawful status under our state statute. ***See id.*** at 31.

We agree with the Commonwealth that Figueroa-Ardon cannot obtain relief because he is no longer serving a sentence for the conviction of persons not to possess firearms. The PCRA provides:

> To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

> (1) that the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:
>
>> (i) currently serving a sentence of imprisonment, probation, or parole for the crime;
>>
>> (ii) awaiting execution of a sentence of death for the crime;
>>
>> (iii) serving a sentence which must expire before the person may commence serving the disputed sentence; or
>>
>> (iv) has completed a sentence of imprisonment, probation or parole for the crime and is seeking relief based upon DNA evidence obtained under section 9543.1(d) (relating to postconviction DNA testing).

42 Pa.C.S.A. § 9543(a)(1).

The Pennsylvania Supreme Court has "construed this provision to preclude PCRA relief where the petitioner is no longer serving a sentence for the crime at the time the PCRA court renders a decision." **Commonwealth v. Smith**, 17 A.3d 873, 904 (Pa. 2011). There, the Court found relief could not be granted on Smith's convictions of conspiracy and possessing instruments of crime because he was no longer serving a sentence for those crimes even though he was sitting on death row for his murder conviction. **See id.**

Figueroa-Ardon was sentenced to 1 to 2 months of incarceration, concurrent with attempted murder, for his conviction of persons not to possess firearms. **See** N.T. Sentencing, 11/9/22, at 46. Credit for time served was

- 11 -

granted starting on March 10, 2021. *See id.* at 48. As such, Figueroa-Ardon finished serving his sentence for persons not to possess on May 10, 2021. Because he was no longer serving a sentence when he filed his PCRA petition, the PCRA court did not err in denying this claim, as he was ineligible for relief on it.[4]

In Figueroa-Ardon's third claim, he argues both trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence regarding the charge of possessing instruments of crime ("PIC"). *See* Appellant's Brief, at 31. Figueroa-Ardon asserts the evidence was insufficient because there was no evidence he intended to commit a crime with the firearm at the time he concealed the firearm on his person. *See id.* at 32.

The Commonwealth responds that this claim suffers from the same fate as the persons not to possess firearms claim because Figueroa-Ardon is no longer serving a sentence for the PIC conviction. *See* Appellee's Brief, at 29. Alternatively, the Commonwealth posits that there was sufficient evidence for the PIC conviction and therefore counsel could not be ineffective for failing to raise a meritless issue. *See id.* at 37.

We again agree with the Commonwealth that relief cannot be granted on this claim because Figueroa-Ardon was no longer serving a sentence for

_____

[4] The PCRA dismissed this claim on its merits. However, we reiterate "this Court may affirm a valid judgment or order for any reason appearing of record." *Smith*, 352 A.3d at 116.

his PIC conviction at the time he filed his PCRA petition. As noted above, Section 9543(a)(1) provides that a petitioner must be serving a sentence at the time the court decides the PCRA petition. *See Smith*, 17 A.3d at 904. The court sentenced Figueroa-Ardon to 3 to 6 months of incarceration, running concurrent with his attempted murder conviction, for his PIC conviction. *See* N.T. Sentencing, 11/9/22, at 46-47. Figueroa-Ardon was granted time served from March 10, 2021. *See id.* at 48. He therefore was no longer serving this sentence at the time he filed his PCRA petition. This claim merits no relief.

Next, Figueroa-Ardon asserts sentencing counsel failed to object to the trial court's alleged reliance upon his silence at sentencing, stating it is an improper factor for the court to utilize in fashioning its sentence. *See* Appellant's Brief, at 33. Sentencing counsel did not object at sentencing, nor was the claim preserved in a post-sentence motion. *See id.* at 37. Although appellate counsel raised the claim, this Court found it waived because it was not preserved for review. *See Figueroa-Ardon*, 305 A.3d 987, at *4. Figueroa-Ardon asserts he is entitled to a new sentencing hearing. *See* Appellant's Brief, at 37-38.

The Commonwealth responds that the trial court relied upon proper sentencing considerations, including Figueroa-Ardon's lack of remorse. *See* Appellee's Brief, at 39-40. Further, the Commonwealth points out that Figueroa-Ardon is relying upon a "single remark torn from context, ignoring the court's adjacent statements and the broader record." *Id.* at 40. Because

the court relied upon proper factors, counsel was not ineffective for failing to raise a meritless issue. **See id.** at 48. We agree with the Commonwealth.

Figueroa-Ardon is correct that a defendant's silence at sentencing may not be the sole basis for determining a defendant's lack of remorse for his failure to take responsibility for his crimes. **See Commonwealth v. Bowen**, 975 A.2d 1120, 1121 (Pa. Super. 2009). However, this Court has consistently held that "lack of remorse is a permissible factor at sentencing." **Bowen**, 975 A.2d at 1124 (citation omitted); **see Commonwealth v. Salter**, 290 A.3d 741, 749 (Pa. Super. 2023) ("lack of remorse is an appropriate sentencing consideration.") (brackets, internal quotation marks, and citation omitted). "Finally, we note that even if a sentence is predicated on an impermissible sentencing factor, as long as independently valid reasons exist for imposing an aggravated sentence, it must be affirmed." **Salter**, 290 A.3d at 751 (citation omitted).

After our thorough review of the sentencing transcript, it is clear the court relied upon more than just Figueroa-Ardon's silence at sentencing. The court's remarks span nearly 5 full pages and detail its consideration of the pre-sentence investigation, mental health report, Figueroa-Ardon's drug and mental health issues, his two confessions, the victim impact statements, lack of remorse, lack of conscience, seriousness of the crime, rehabilitative needs, and protection of society. **See** N.T. Sentencing, 11/9/22, at 41-45. Even if we were to assume that the trial court impermissibly relied upon Figueroa-Ardon's

silence at sentencing, it is clear there are independently valid reasons for the sentence imposed. Because the claim lacks merit, counsel cannot be found ineffective for failing to raise it. Figueroa-Ardon's fourth claim does not merit relief.

Finally, Figueroa-Ardon argues appellate counsel was ineffective for failing to challenge the sufficiency of the evidence regarding the conviction of disarming a law enforcement officer. *See* Appellant's Brief, at 38. He asserts there was no evidence he disarmed Officer Stadulis or attempted to disarm Officer Stadulis. *See id.* at 39. As such, counsel was ineffective for failing to raise the claim on appeal. *See id.* at 40.

The Commonwealth posits that there was more than sufficient evidence to find Figueroa-Ardon guilty of attempting to disarm Officer Stadulis. *See* Appellee's Brief, at 49. The Commonwealth quotes Officer Stadulis' trial testimony that Figueroa-Ardon "was reaching for my gun on my duty belt." *Id.* at 52. As this claim is meritless, the Commonwealth asserts counsel cannot be found ineffective for failing to raise it. *See id.* at 53. We agree with the Commonwealth.

The PCRA court aptly addressed this claim:

[Figueroa-Ardon has] alleged that … counsel was ineffective for failing to appeal the conviction for disarming a law enforcement officer because the evidence was insufficient to support a conviction for that charge. PCRA counsel then referenced the limited testimony from Officer Stadulis that he only felt [Figueroa-Ardon] grab his belt while they were struggling and rolling around on the ground. He never felt [Figueroa-Ardon] actually make contact with the gun. To the contrary, the evidence at trial was

- 15 -

sufficient to convict [Figueroa-Ardon] of this offense. Specifically, Officer Stadulis testified that once he and [Figueroa-Ardon] were in the street and he was able to knock [Figueroa-Ardon's] gun out of his hand, [Figueroa-Ardon] continued to resist arrest. At that point, [Figueroa-Ardon] was grabbing around [Officer Stadulis'] gun belt. When asked by counsel for the Commonwealth where exactly [Figueroa-Ardon] was reaching on his gun belt, Officer Stadulis replied "all around the gun area, the front of it, all around it … I just felt him touching." Officer Stadulis testified that [Figueroa-Ardon's] hands were around the gun on his gun belt. Even more telling was the statement Officer Stadulis gave to Detective Stephen Kerns on the day of the incident, March 10, 2021, in which Officer Stadulis indicated that [Figueroa-Ardon] was reaching for his gun on his duty belt. Thus, it was clear from [Figueroa-Ardon's] actions that he was attempting to disarm Officer Stadulis of his firearm.

Additionally, trial counsel in his closing argued to the court that it should have reasonable doubt as to whether [Figueroa-Ardon] was trying to get the gun off of Officer Stadulis. Looking at the totality of the circumstances, there was no doubt in the court's mind that [Figueroa-Ardon] was reaching around Officer Stadulis' waistband at his gun belt in order to take his gun because [Figueroa-Ardon's] gun had been knocked out of his hand by Officer Stadulis.

PCRA Court Opinion, 7/22/25, at 14-15. (record citations and unnecessary capitalization omitted).

We cannot find any error in the PCRA court's analysis. Our own review of the transcripts shows sufficient evidence to convict Figueroa-Ardon of attempting to disarm a law enforcement officer. As counsel cannot be deemed ineffective for failing to raise a meritless issue, Figueroa-Ardon's final claim does not entitle him to relief.

Because we find Figueora-Aldon is ineligible for relief as to some of his claims and that all of Figueroa-Ardon's remaining claims are without merit, we affirm the order of the PCRA court dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2026